IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL NELSON,

    Plaintiff,

v.

MATRIXX INITIATIVES, INC., a Delaware corporation, ZICAM LLC, an Arizona limited liability company, and DOES 1 through 25,

    Defendants.

No. C 09-02904 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND VACATING HEARING**

## INTRODUCTION

In this products-liability action, defendants move to dismiss several of plaintiff's claims. For the following reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

## STATEMENT

Plaintiff Michael Nelson, an attorney proceeding *pro se*, is a California resident. Defendants Matrixx Initiatives, Inc. and Zicam, LLC, are engaged in the development, manufacture, and marketing of over-the-counter pharmaceuticals, including Zicam Cold Remedy Nasal Gel Swabs and Zicam Cold Remedy Nasal Gel Spray.

Plaintiff used Zicam Cold Remedy Gel Swabs in 2006 and Zicam Cold Remedy Nasal Gel Spray in 2008. Upon application of the Nasal Gel Spray, plaintiff felt an intense burning in his nostrils. Following that incident, plaintiff lost his sense of smell (First Amd. Compl. ¶¶ 15–22).

Plaintiff's first amended complaint alleges the following claims: (1) defective product design; (2) defective product — failure to warn; (3) defective product manufacture; (4) fraud by intentional misrepresentation; (5) fraud by false promise and concealment; and (6) negligence. Defendants now move to dismiss plaintiff's claims for defective product design, defective product manufacture, and all fraud claims pursuant to FRCP 12(b)(6). This order follows full briefing.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949–50 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). FRCP 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

**1. DESIGN DEFECT.**

A federal court sitting in diversity applies state law to products-liability claims. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1193 (9th Cir. 2007). Under California law, a product is defectively designed if it fails to meet an ordinary consumer's expectations, *or* if

2

injury is attributable to a specific design feature of the product and the risks associated with the design outweigh its benefits. The "consumer expectations" strict-liability test is synonymous with a "reasonableness" test. *Papike v. Tambrands Inc.*, 107 F.3d 737, 743 (9th Cir. 1997). A plaintiff alleging a design defect claim must also establish that the defect was a "substantial factor" in bringing about his injury. *Rutherford v. Owens Illinois, Inc.*, 16 Cal. 4th 953, 968 (1997).

Defendants contend plaintiff fails to sufficiently allege a design defect claim because plaintiff does not provide a detailed explanation of what was defective about the products, plaintiff does not allege a "nexus" between the alleged design defect and his injuries and, most importantly, plaintiff does not distinguish between the two products at issue in this action (Br. 6–7).

The complaint refers collectively to the Zicam Cold Remedy Nasal Gel Swab and Nasal Gel Spray products as "Nasal Gel." Plaintiff alleges he used the Nasal Gel in a manner reasonably foreseeable by defendants. Plaintiff specifically states that he applied the Nasal Gel Spray to both nostrils. As a result of his use of the products, plaintiff alleges he has suffered a total and irreversible loss of his ability to smell and taste. Plaintiff further alleges the defendants "owed a duty to plaintiff . . . to use due care and caution in the design of its [Nasal Gel] to avoid unreasonable risks of injury during reasonably foreseeable uses of the product," and that defendants failed in this duty by (First Amd. Compl. ¶ 32):

> . . . instructing users to apply [the Nasal Gel] intranasally, [] failing to engage in proper and adequate testing of this product and its effects on the sense of smell, [] failing to conduct an adequate investigation into the historical and scientific evidence that relates intranasal zinc application to anosmia or smell loss and otherwise failing to design the product in accordance with prevailing industry standards in a manner that would have eliminated unreasonable risks . . . .

Though it is a close call, this order finds these allegations are sufficient to support a design defect claim under California law. Under the "ordinary consumer" standard, a product designed for intranasal use is expected not to cause irreparable injury to the nose if used in a foreseeable manner. Because plaintiff's allegations, taken as true, satisfy the "consumer expectations" test, he need not also identify a specific feature of the products or allege that the

3

risks of that feature outweigh the benefits thereof. *See Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010). Plaintiff nonetheless also alleges both products contain zinc and that zinc application is linked to anosmia or smell loss. Plaintiff need not distinguish between the products if the same defect — suggested/intended intranasal application of zinc — is alleged as to both. Moreover, contrary to defendants' characterization, plaintiff specifically alleges that the use of these products caused his injury. Accompanying facts are alleged giving rise to a plausible inference of causation (First Amd. Compl. at ¶¶ 9, 26–31, 35). Accordingly, defendants' motion as to plaintiff's design defect claim is **DENIED.**

### 2. MANUFACTURING DEFECT.

> Under the manufacturing defect theory, generally a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. The manufacturing defect theory posits that a suitable design is in place, but that the manufacturing process has in some way deviated from that design.

*Lucas*, 726 F. Supp. 2d at 1154–55 (citations omitted). The complaint alleges defendants breached their duty to plaintiff by (First Amd. Compl. ¶ 49):

> [M]anufacturing a product intended to and instructing its users to apply [Nasal Gel] intranasally; [] failing to use proper manufacturing methods and procedures to make [Nasal Gel] safe for use; [] failing to adopt adequate and proper manufacturing methods and procedures to make [Nasal Gel] safe for use; [] failing to test for and eliminate impurities in the manufacture of [Nasal Gel] so that the product would be safe for use; [] failing to test for and implement instructions on the appropriate shelf life . . . and by otherwise failing to manufacture the product in accordance with prevailing industry and scientific standards.

Defendants contend that the complaint fails to explain how the products deviated from defendants' intended result or design, or from other seemingly identical products. This order agrees. Nowhere does plaintiff allege the products deviated from defendants' intended manufacture or "other ostensibly identical units of the same product line(s)" *Lucas*, 726 F. Supp. 2d at 1154–55. Nor does plaintiff sufficiently allege a suitable design is in place for nasal gel that would reduce or avoid the alleged risks. The conclusory statement that defendants failed to manufacture the products "in accordance with prevailing industry and scientific standards" cannot suffice to put defendants on notice of an alleged manufacturing defect.

4

1  Plaintiff's opposition brief provides no legal authority for allowing his manufacturing
2  defect claim as pled. Plaintiff argues that defendants "again ignored all [of the] incorporated
3  factual allegations, which formed the bulk of the facts" (Opp. 5). None of the preceding
4  paragraphs relay any defect in manufacture — plaintiff specifically states that the product was
5  designed by defendants to be used in precisely the manner he used it (First Amd. Compl. ¶ 18).
6  Nowhere does plaintiff suggest that the individual bottles of Nasal Gel he purchased were
7  different from other Nasal Gel bottles or products. Accordingly, defendants' motion to dismiss
8  plaintiff's claim for manufacturing defect is **GRANTED.**

   **3. FRAUD CLAIMS.**

10  The complaint alleges fraud under three theories: (1) intentional misrepresentation;
11  (2) false promise; and (3) concealment. All of these claims are subject to the heightened
12  pleading standard of FRCP 9(b).

   **A. Intentional Misrepresentation and False Promise.**

14  Under California law, the elements of a claim for fraud by intentional misrepresentation
15  and fraud by false promise are identical, requiring: (1) a misrepresentation, including
16  a concealment or a nondisclosure; (2) knowledge of falsity of the misrepresentation;
17  (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) damages.
18  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004); *Lazar v. Superior Court*,
19  12 Cal. 4th 631, 638 (1996). Concealment also requires that "the defendant must have been
20  under a duty to disclose some fact to the plaintiff." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 745
21  (2007).

22  Plaintiff's fraud by intentional representation and fraud by false promise claims are
23  centered on the following alleged "representations of material facts [made] to the general
24  public, including plaintiff": that Nasal Gel was safe to use; was an effective cold remedy; was
25  a homeopathic cold remedy; was "safe, fast acting, and without any apparent side effects"; gets
26  the user over a cold faster; reduces the severity of cold symptoms; doesn't temporarily suppress
27  the symptoms but reduces the severity and duration of the cold; reduces the duration of the
28  common cold by 71% to 85% when taken at the onset of symptoms; reduces the duration of cold

5

1 symptoms from 12 days to an average of 1.5 days; and reduces common cold symptoms of sore
2 throat, stuffy nose, sneezing (*id*. at ¶ 55).

3       This order finds the complaint fails to allege each element with the required specificity.
4 Instead, the complaint merely parrots the elements of each claim. *First*, plaintiff does not state
5 who made these representations or where he heard/saw them. *Second*, plaintiff merely states that
6 the representations were false without giving any basis for this allegation — *i.e.,* why plaintiff
7 believes these statements to be false. *Finally*, even assuming all other elements had been met,
8 plaintiff has alleged no facts giving rise to a reasonable inference of reliance on any of these
9 statements. In fact, plaintiff's own exhibit expressly states that he does not know whether he
10 ever read the warnings or directions on the product packaging or whether he followed those
11 directions (Nelson Decl. Exh. 1 at 9). Moreover, the several statements in reference
12 to homeopathic reduction of cold symptoms appear unrelated to plaintiff's alleged injury, which
13 is not alleged to have resulted from the products' failure to reduce the severity of plaintiff's cold
14 (First Amd. Compl. ¶¶ 56–63).

15       In his opposition brief, plaintiff argues that "most of the specific representations . . . are
16 contained on the boxes containing the Zicam product and instructions" and that "defendants are
17 aware of this" (Opp. 7). Even if plaintiff's motion papers could supplement his pleading, which
18 they cannot, plaintiff still fails to allege *which* of the statements were allegedly contained on the
19 boxes and whether he read these statements and purchased and used the Nasal Gel products
20 as a result.

21       Plaintiff also makes the confusing argument that a "simple, straight forward fraud" claim
22 differs in its requirements from a "complex factually situation" (Opp. 5). Where fraud is alleged,
23 a plaintiff must meet the heightened pleading standard of FRCP 9(b). In less complex scenarios,
24 a plaintiff's job is presumably made easier — he need only allege the simple set of facts meeting
25 each element of the claim. A plaintiff is not, however, relieved of his duty to so plead. If this
26 indeed is a simple scenario, plaintiff could have alleged the "who, what, when, and where" of the
27 fraud with little difficulty. He failed to do so. Accordingly, defendants' motion to dismiss
28 plaintiff's claims for fraud by intentional misrepresentation and false promise is **GRANTED.**

6

### B. Concealment.

To state a claim for active concealment, a plaintiff must plead the following five elements: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. *Lovejoy v. AT&T Corp.*, 119 Cal. App. 4th 151, 157 (2004).

Plaintiff's fraud by concealment claim is centered on the following alleged "conceal[ment] of [] material facts from the general public, including plaintiff": Nasal Gel, when used in a reasonably anticipated manner causes loss of smell; causes significant loss of taste; was never submitted to the FDA for approval; was never approved by the FDA; does not reduce the symptoms of the common cold; is not and has never been approved for safety by the FDA; that defendants' expert consultants had recommended a written warning be placed on the Nasal Gel product that it could cause anosmia; that defendants did not perform any testing on the safety of [Nasal Gel] or its adverse effects on the sense of smell; that defendants received complaints of smell loss from using the product immediately after its 1999 release to market; that defendants received thousands of complaints of smell loss from using the products by the time of plaintiff's 2008 purchase, that clinical studies performed by defendants were seriously flawed because defendants did not test for the presence of a cold in test subjects and failed to adhere to their own protocols, and the studies were biased due to business relationships with the clinical labs; that third parties' studies on the products revealed no improvement or reduction of cold symptoms in test subjects; that defendants entered into agreements with third parties not to disclose flawed and biased clinical studies; that studies advocating benefits of the Nasal Gel products were written or materially edited by defendants; that the instructions that Nasal Gel users should not "sniff" upon application of the product was contrary to the disclosures of the best mode of the products' use as set forth in United States Patent Nos.

7

1  6,080,783 and 6,365,624; that defendants were aware of published studies showing zinc sulfate
2  had caused anosmia in children before defendants released the products; and that defendants
3  learned that zinc gluconate (contained in both products) was more toxic to cells than zinc sulfate
4  (Compl. ¶ 55).

This order finds plaintiff has sufficiently pled a claim for fraud by concealment. Plaintiff has set forth numerous material facts allegedly concealed, as well as the specific times and circumstances when defendants learned of these material facts. Plaintiff alleges that, had he known the true facts, he would have refrained from using the Nasal Gel products. Plaintiff further alleges that defendants' failure to disclose these facts directly contributed to his injury, which allegedly resulted from his use of those products. It may be inferred that defendants concealed the unfavorable studies with fraudulent intent, for the purpose of making a profit; it may also be inferred that plaintiff, who was unaware of the studies or their results, would have acted differently had he known of the suppressed facts.

Defendants argue that plaintiff's claim must fail because he has not properly alleged a duty to disclose (Br. 13). Although a duty to disclose generally arises when a defendant owes a fiduciary duty to a plaintiff, a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff. *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1199 (2011). This is such an instance. Taking plaintiff's factual allegations as true, defendants marketed and sold their product with specific knowledge of dangers posed thereby. Plaintiff has successfully put defendants on notice of the fraud by concealment claim against which they must defend. Accordingly, defendants' motion is **DENIED** as to this claim.

**4.    PLAINTIFF'S REQUEST TO AMEND THE FIRST AMENDED COMPLAINT.**

In his opposition brief, plaintiff requests permission to amend paragraph 17 of the first amended complaint "to reflect minor changes." Local Rule 10-1 states: "Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference." Plaintiff may not avoid this requirement by including this request in a responsive brief. Accordingly, plaintiff's request is

**DENIED.** Plaintiff may seek leave to amend the claims dismissed by this order, and should at that time make his request with respect to paragraph 17, appending the proposed amended pleading as required.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's improper request to amend the first amended complaint is **DENIED.** The motion hearing set for May 31, 2012, is hereby **VACATED.**

As to the claims dismissed above, plaintiff may seek leave to amend the complaint and will have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: May 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE